1  Erin Rose Ronstadt, SBN 028362
   Clayton W. Richards, SBN 029054
2  OBER PEKAS RONSTADT
   3030 N. 3rd Street, Suite 1230
3  Phoenix AZ 85012
   Phone: (602) 277-1745
4  Fax: (602) 761-4443
   erin@oberpekas.com
5  clayton@oberpekas.com

6  *Attorneys for Plaintiff*

7           **IN THE UNITED STATES DISTRICT COURT**

8             **FOR THE DISTRICT OF ARIZONA**

9  Ronald D. Finley,                          No.

10                              Plaintiff,

11  v.                                         **COMPLAINT**

12  Dick's Sporting Goods Health and Welfare
    Plan, an ERISA benefit plan; Dick's
13  Sporting Goods, Inc., a plan administrator;
    and Liberty Life Assurance Company of
14  Boston, a plan fiduciary,

                                Defendants.
15

16       For his claims against Dick's Sporting Goods Health and Welfare Plan (the "Plan"), an

17  ERISA benefit plan; Dick's Sporting Goods, Inc. ("Dick's"), the Plan Administrator; and

18  Liberty Life Assurance Company of Boston ("Liberty"), a plan fiduciary, Plaintiff Ronald D.

19  Finley ("Mr. Finley" or "Plaintiff") alleges as follows:

20                    ***Jurisdiction, Venue And Parties***

21       1.    This action arises under the Employee Retirement Income Security Act of

22  1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

23       2.    The Plan is a purported ERISA benefit plan established and maintained by

24  Dick's for the benefit of its employees.

25       3.    Dick's is the Plan Sponsor, Plan Administrator, a Plan fiduciary, and

26  employer.

27       4.    Dick's insured benefits under the Plan with Liberty Policy No. GD/GF3-

28  880-025155-01 (the "Policy").

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

5.      Mr. Finley was a participant and beneficiary of the Plan as an employee of Dick's.

6.      Liberty is the third-party claims administrator for the Plan and a Plan fiduciary.

7.      At the time Mr. Finley sought LTD benefits under the Plan, Liberty administered claims for Dick's under the Plan, acted on behalf of the Plan, and acted as an agent of Dick's and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

8.      As Plan fiduciaries, Dick's and Liberty have a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

9.      Mr. Finley currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

10.     The Plan and Dick's have their principal place of business in the Commonwealth of Pennsylvania.

11.     Liberty has its principal place of business in the State of Massachusetts.

12.     Liberty and Dick's are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

13.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14.     Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## **GENERAL ALLEGATIONS**

### ***Mr. Finley's Employment***

15.     Mr. Finley began working for Dick's on April 27, 2015.

16.     His job title at Dick's was Store Manager, and his duties included:

➢ Complete weekly schedules for Associates to ensure within budget.

➢ Check inventory and forward e-mails to order merchanise.

➢ Maintain sales floor, to ensure prices and signs are changed, floor is cleaned, and stocked.

➢ Ensure that Game Plan is implemented and assist with Game Plan.

➢ Customer Service, issues special request/orders and retrieve merchandise for customers.

➢ Open store, ensure that computers are open.

➢ Cash office duties, count safe at the beginning and end of day.

➢ Verify daily deposits.

➢ Front end duties, operate cash register or call for assistant.

➢ Organization of stockroom, ensure stockroom is neat and organized.

➢ Update daily reports on sales figures.

➢ Operate computer to maintain inventory and sales levels.

➢ Answer telephone and direct call to appropriate party.

➢ Verifies cashiers paperwork.

➢ Ensures services are updated, such as stringing tennis rackets, and bike repairs.

➢ Liaison between customer and delivery company, handle any issues and record information into computer.

➢ Ensure loss prevention guidelines are updated and followed, such as bag checks, camera systems and key control.

➢ Ensure markdowns are complete.

17.     The physical demands of Mr. Finley's job as store manager included: 4 hours of standing, 4 hours of walking, up to 1 hour of each of sitting, bending, twisting, climbing, lifting, carrying up to 50 pounds, kneeling, and crouching.

18.     He discontinued working on September 19, 2015 due to his disabling conditions.

19.     Liberty insured and administered Dick's short-term disability ("STD") benefit plan.

20.     Mr. Finley applied for, and Liberty approved, his STD benefits from September 20, 2015 through March 20, 2016, the maximum STD benefit period.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-3-

21.     In a letter dated January 6, 2016, Liberty informed Mr. Finley that the "provisions and requirements in the LTD Policy differ from those of the STD Plan," which was not true.

22.     The definition of Disability under the STD Plan was "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own job."

23.     At the start of the LTD period, the definition of Disability for the LTD Policy is "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation."

24.     Despite the same criteria, Liberty delayed the start of LTD benefits for two months.

### Plan Language

25.     The Policy provides protection for various "classes" of Dick's employees.

26.     The Policy's Class 1 included Mr. Finley.

27.     The Policy defines "Disability" or "Disabled" as: "1) during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and 2) thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."

28.     The Policy defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

29.     Under the Policy "Own Occupation" means "the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy."

**OBER PEKAS RONSTADT**
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

-4-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

30.     Under the Policy, "Any Occupation" means "any occupation, for which the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

31.     The Policy defines "Treatment" as "consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicine."

32.     The Policy defines "Appropriate Available Treatment" as "care or services" that are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;

2. accessible within the Covered Person's geographical region;

3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;

4. in accordance with generally accepted medical standards of practice.

33.     The Policy defines "Proof" as "the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of objective medical evidence in support of a claim for benefits."

### *Mr. Finley's Disabilities*

34.     Mr. Finley suffers from shingles and post-herpetic trigeminal neuralgia (nerve pain caused by shingles).

35.     Mr. Finley takes prescription narcotic medication to treat the nerve pain.

36.     Mr. Finley's disabilities cause severe pain.

-5-

37.     Seven-to-ten times per day at varying durations, Mr. Finley experiences extensive debilitating shocking nerve pain on the right side of his face, ear, and eye that radiates through his teeth on the right upper and lower quadrants of his mouth.

38.     Simultaneously, Mr. Finley endures dizziness and vertigo, which limits his ability to walk.

39.     The pain medication causes debilitating side effects.

40.     In May 2016, Liberty approved Mr. Finley's claim for LTD benefits effective March 20, 2016.

41.     Libert found Mr. Finley disabled from his Own Occupation.

42.     Liberty required Mr. Finley to apply for Social Security Disability benefits.

43.     Liberty required Mr. Finley to sign a reimbursement agreement to avoid having his LTD benefits offset by an estimated Social Security Disability award while his application for Social Security benefits was pending.

44.     Provisions of the reimbursement agreement violate 42 U.S.C. § 407(a) and ERISA by giving Liberty a lien against the award of Social Security benefits, seeking to impose a constructive trust on those beneifts, and requiring Mr. Finley to reimburse Liberty from his general assets.

45.     In April 2016, when his mother passed away, Mr. Finley traveled by train to Chicago to help his father. Traveling exacerbated his conditions.

46.     On July 6, 2016, during a telephone conversation Liberty observed that Mr. Finley did not sound well, suffered shortness of breath, and spoke very softly.

47.     On Septmeber 26, 2016, Liberty noted that Mr. Finley was not doing well, had spent most of the day in bed with severe pain and breakthrough shock-like symptoms.

48.     On November 11, 2016, Liberty referred Mr. Finley's claim to a consulting physician for a full review, after which Liberty continued to pay benefits.

49.     On December 22, 2016, Mr. Finley went to the emergency room due to pain.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-6-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

50.     On August 31, 2018, The Social Security Administration ("SSA") issued a fully favorable decision. The Social Security decision is attached as Exhibit A.

51.     Admintrative Law Judge for the SSA, Kathleen Mucerino, found:

➤ Mr. Finley suffers the following severe impairments: post-herpetic neuralgia neuropathy with crossover to intermittent trigeminal neuralgia secondary to viral infection/shingles with chronic pain, vertigo, and obesity.

➤ The above medically determinable impairments significantly limit the ability to perform basic work activities and are severe impairments.

➤ The demands of Mr. Finley's past relevant work exceed his residual functional capacity.

➤ Mr. Finley's functional capacity is less than the full range of sedentary work.

➤ Mr. Finley's skills are not transferable to another occupation.

➤ The onset date of his disability is September 19, 2015.

52.     Federal regulation, 20 C.F.R. § 404.1505 (a), provides the SSA's "Basic definition of disability," And states:

> The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work (*see* § 404.1560(b)) or any other substantial gainful work that exists in the national economy.

53.     It is not possible to meet this definition and not meet the Policy's definition of Disabled for both Own Occupation and Any Occupation.

### *The Denial*

54.     About a year before the SSA found Mr. Finley disabled, in a letter dated August 23, 2017, Liberty terminated Mr. Finley's benefits (the "Denial").

55.     Liberty referred Mr. Finley's claim to a neurologist for a physician review.

56.     The reviewing physician, Dr. Hoenig, did not examine Mr. Finley.

57.     Dr. Hoenig confirmed Mr. Finley's disability, but disagreed with the restrictions and limitations diagnosed by his treating providers.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

58. Dr. Hoenig's opinion was qualified as being "from a neurological perspective only."

59. Dr. Hoenig had no contact with the treating physician.

60. Although the medical evidence remained the same, based on Dr. Hoenig's review, Liberty reversed its prior decision and found that Mr. Finley was capable of performing his Own Occupation.

61. Dr. Hoenig did not explain his rejection of the treating physician's opinions.

62. Dr. Hoenig did not explain his disagreement with Liberty's prior peer reviewer.

63. Courts have discounted Dr. Hoenig's review for failing to address evidence that conflicts with his opinion. *See, e.g., Miller v. PNC Fin. Servs. Group, Inc.,* 278 F. Supp. 3d 1333, 1344 (S.D. Fla. 2017) ("Dr. Hoenig reaches several conclusions directly contradicting the findings in [treating physicians' reports], without explicitly addressing the contrary evidence. For example, Dr. Hoenig stated 'there is no side effects attributed to the claimant's medications.' However, Schuman specifically noted on his questionnaire that Ms. Miller experiences the following side-effects from her medication: 'fatigue, dizziness, muscle weakness, and difficulty sleeping.'") (record cites omitted); *Johnson v. Life Ins. Co. of N. Am.,* 2017 WL 4180328 at *13-14 (D. Colo. Sept. 21, 2017) (finding Dr. Hoenig's report unreliable due to bias created by having been provided prior incomplete medical summaries and his demand for objective evidence of pain despite not disputing the underlying diagnosis or that pain is a symptom of it). The *Miller* court found a denial that relied on Dr. Hoenig's flawed analysis to be "problematic" because it was essentially "copied and pasted" from his report. *Id.*

64. Liberty did not conduct any vocational analysis.

65. In the Denial, Liberty incongruously reserved the right to seek an offset of LTD benefits if the SSA found Mr. Finley disabled, a circumstance necessarily dependent on Mr. Finley being disabled.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

66.     The Denial also stated, "[n]othing in this letter should be construed as a waiver of any rights and defenses under the [ ] Policy, and all of these rights and defenses are reserved to the company, whether or not they are specifically mentioned herein," which is a misstatement of law and adversarial.

67.     The Denial also stated that Mr. Finley must submit a written request for review "within 180 days from the date of [the Denial]," which is contrary to the ERISA regulations, which require *at least* 180 days to submit a request for review. *See* 29 C.F.R. § 2560.503-1(h)(1), (4) (The claims procedures of a plan providing benefits will not . . . be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless [they comply] with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) throught (v)" and "[p]rovide claimants at least 180 days following receipt of a notification of adverse benefit determination within which to appeal the determination.")

### The Appeal

68.     Mr. Finley timely appealed the Denial.

69.     On March 26, 2018, Liberty completed a neurological review, which found Mr. Finley meets the diagnostic criteria for post-herpetic neuralgia and may meet the criteria for co-morbid depression, but deferred opinion regarding functional capacity to an appropriate specialist.

70.     Liberty never referred Mr. Finley's claim to an appropriate specialist nor conducted a functional capacity evaluation.

71.     In a letter dated April 2, 2018, Liberty denied his appeal (the "Final Denial").

72.     Liberty again limited its review of the claim to a neurological perspective only, had no contact with Mr. Finley's treating provider, and did not examine Mr. Finley.

73.     Liberty relied, in part, on the same reviewing physician as in the Denial.

74.     Liberty acknowledged that Mr. Finley experiences "paroxysmal intermittent attacks of sever intense pain that [is] hot and burning with the sensation of spiders crawling

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

on [his] face [ ] and deep burning pain," but notes this does not suggest neuropathic pain and that no triggers were identified.

75.     Liberty discounted Mr. Finley's symptoms as "self-reported," but the Policy does not have any limitation or exclusion for self-reported symptoms.

76.     Liberty again concluded that there was no *neurologic* basis to support restrictions and limitations and discounted Mr. Finley's symptoms because there was no "corroborating medical evidence (i.e. physical examination, diagnostic test results, etc.)," even thought that is not a requirement of the Policy and pain cannot be corrobarated by physical examintion or diagnostic testing. *See Saffon v. Wells Fargo Long Term Disability Plan,* 522 F.3d 863, 873 (9th Cir. 2008) ("Our Social Security precedents are relevant for the factual observation that disabling pain cannot always be measured objectively-which is as true for ERISA beneficiaries as it is for Social Security claimants."); *Palmer v. University Medical Group*, 994 F. Supp. 1221, 1223 (D. Or. 1998) ("Merely because we cannot see pain or fatigue on an x-ray, or measure it in a laboratory, does not mean that it is not real.")

77.     The policy defines "Physician" as a person who "is licensed to practice medicine and is practicing within the terms of his license." In Arizona, the "practice of medicine" includes "the diagnosis . . . or the claim to be able to diagnose . . . any and all human diseases, injuries, ailments, infirmities or deformities, physical or mental, real or imaginary." A.R.S. § 32-1401(22).

78.     This is especially consequential in Mr. Finley's claim because Liberty's reviewing physicians opine on the validity of Mr. Finley's treating physician's diagnoses, but a doctor not licensed in Arizona is not permitted to offer opinions about a patient in Arizona.

79.     Under the Policy definition of "Physician," Mr. Finley could not rely on a doctor not licensed in Arizona to review his medical records and opine about his medical condition because that doctor would be practicing outside the scope of his or her medical license and would not meet the policy definition of "Physician."

-10-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

80.     That Liberty relies on physicians that Mr. Finley would not be permitted to rely on violates the maxim, "what's sauce for the goose is sauce for the gander." *See Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161, (9th Cir. 2001)(quoting *Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc. v. Multistate Legal Studies, Inc.,* 26 F.3d 948, 952 (9th Cir.1994)); and *AMERCO v. Shoen*, 184 Ariz. 150, 164, 907 P.2d 536, 550 (App. 1995).

81.     The Final Denial does not explain why it credited its paper reviewers over Mr. Finley's treating physicians.

82.     The Final Denial misstated the law and was unduly adversarial.

83.     A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

84.     The claim file Liberty produced to Mr. Finley is incomplete. For example, it is missing an October 29, 2015 office visit note by Dr. Andrea Patton ("Dr. Patton"), a November 24, 2015 office visit note by Dr. Patton, a referral form of the same date, and correspondence between Liberty and Mr. Finley.

### Surveillance

85.     Without justification, Liberty conducted extensive surveillance on Mr. Finley throughout the short period of time that he was on claim.

86.     Liberty referred Mr. Finley's claim for surveillance on January 26, 2016, the same day he explained his medical history.

87.     Liberty contracted with Hub Enterprises, Inc. ("Hub") to perform research on Mr. Finley and perform video surveillance of Mr. Finley on February 7 and 8, 2016, and later on January 23, 24, and 25, 2017. Hub did not observe Mr. Finley leave his home on any of those five days.

88.     The excessive surveillance, which revealed nothing inconsistent with Mr. Finley's reported functionality, demonstrates Liberty was fishing for evidence in order to terminate benefits.

89.     The excessive surveillance in and of itself evidences how Liberty's structural conflict of interest unduly influenced the claims process. Liberty invested significant time and money in trying to undermine Mr. Finley's reported symptoms, because it did not want to accept liability on his claim.

90.     Liberty's surveillance of Mr. Finley was not only an admission of its obligation to consider his subjective complaints, but also evidence of its desire to avoid paying the claim.

91.     The surveillance does not support Liberty's Denial.

### Treating Provider Assessments

92.     Due to his medical conditions, Mr. Finley is unable to perform the Material and Substantial Duties of his Own Occupation or Any Occupation.

93.     Dr. Patton was Mr. Finley's attending physician.

94.     Dr. Patton treated Mr. Finley for post-herpetic neuralgia and reported to Liberty that Mr. Finley suffers fatigue, dizziness four-to-five times per day for up to three hours, sharp pain in the face six-to-seven times per day for 30-45 minutes, and constant tinnitus.

95.     Dr. Patton reported that the conditions may be lifelong and may not improve.

96.     Dr. Patton did not release Mr. Finley to return to work.

97.     Dr. Patton reported that Mr. Finley was unable to perform any task that required concentration, that he could not drive due to his narcotic medication and vertigo, and that his medication caused sedation.

98.     Dr. Klaski, a neurologist, prescribed multiple pain medications to treat Mr. Finley's constant pain and flareups.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

99.     Mr. Finley was taking Clindamycin HCl, Hydrocodone-Ibuprofen, Oxycodone HCL, Ibuprofen, Gabapentin, Montelukast Sodium, Prontil, Fluticasone Furoate-Vilanterol, and Carbamazepine.

100.     When asked to sign a letter agreeing with Liberty's most recent peer review, Dr. Klaski refused.

101.     The medical records demonstrate that Mr. Finley's condition has not improved.

102.     Liberty has no evidence of medical improvement that would enable Mr. Finley to return to work in his Own Occupation or Any Occupation.

### Liberty Failed To Conduct A Full And Fair Review

103.     Liberty breached its fiduciary duties by acting as Mr. Finley's adversary during the claim process and failing to conduct a full and fair review and apprise Mr. Finley of the information it needed before terminating benefits.

104.     Liberty's procedural violations reveal its intent to deny Mr. Finley's claim and its breach of fiduciary duty, as well as an abuse of discretion. For example, Liberty:

➢ failed to apprise Mr. Finley of his true rights on appeal;

➢ disingenuously instructed Mr. Finley to submit on appeal whatever information "you feel will support your claim," which is antithetical to Liberty's requirement to engage in "meaningful communication" with Mr. Finley;

➢ doggedly pursued surveillance in the hopes of finding evidence against Mr. Finley;

➢ failed to request and secure evidence it knew could be supportive to the continuation of Mr. Finley's benefits, *e.g.,* a functional capacity evaluation or vocational analysis;

➢ created barriers to Mr. Finley perfecting his claim by requiring him and his providers to fax documents instead of using email;

➢ did not properly maintain the claim file; and

➢ ignored the entirety of Mr. Finley's symptoms.

105.     Liberty relied on new paper reviewers who rejected the treating physicians' opinions.

-13-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

106.   Liberty improperly provided the new paper reviewers with previous paper reviewers' reports.

107.   Mr. Finley cannot perform the material duties of his Own Occupation or Any Occupation and therefore comes within the definition of Disability under the Plan.

108.   Mr. Finley exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(All Defendants)**

109.   All other paragraphs are incorporated by reference.

110.   The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

111.   The Plan represents LTD coverage and a promise to provide LTD benefits until Mr. Finley is no longer Disabled under the terms of the Plan.

112.   Mr. Finley continues to be Disabled for his Own Occupation and Any Occupation.

113.   Mr. Finley has claimed the benefits under the Plan to which he is entitled.

114.   Mr. Finley reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan for the maximum benefit period or until he was no longer disabled.

115.   Despite the coverage of Mr. Finley's Disability, Liberty and the Plan improperly terminated his LTD benefits in breach of the Plan and ERISA.

116.   Liberty's and the Plan's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

117.   Although the Policy states Liberty has discretion to construe the terms of the policy and to determine benefit eligibility, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-14-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

118.    On information and belief, the Plan does not reserve discretion to the Plan Administrator, does not contain terms by which discretion can be delegated, and therefore, under ERISA, discretion could not be delegated to Liberty.

119.    Even if Dick's properly delegated discretionary authority to Liberty, in light of Liberty's wholesale and flagrant procedural violations of ERISA, Mr. Finley should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

120.    Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Finley is informed and believes that Liberty makes claims decisions based on the claims resources and financial risk it faces on certain claims.

121.    Liberty wrongfully denied Mr. Finley's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

122.    Liberty did not properly consider all of the available evidence when terminating Mr. Finley's benefits.

123.    Liberty failed to conduct a full and fair review.

124.    Liberty abused its discretion by basing its decision on unreliable and inaccurate information.

125.    Upon information and belief, Liberty tainted its medical file reviewers by giving the reviewers inaccurate information regarding Mr. Finley, while also failing to provide its reviewers with all of the relevant evidence.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

126.    Upon information and belief, Liberty provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

127.    Upon information and belief, Liberty did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Mr. Finley's administrative appeals process, or at least used employees who were managed by the same person(s) and who were orchestrating the Denial according to Claim Discussion directives. *See 29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

128.    Liberty routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

129.    Liberty failed to properly consider the opinions of Mr. Finley's treating and examining physicians.

130.    In terminating Mr. Finley's LTD benefits, Liberty completely disregarded evidence that Mr. Finley's conditions had not changed or improved.

131.    Liberty has no evidence that Mr. Finley's conditions changed or improved since it determined that he met the definition of Disabled in the Policy.

132.    The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation and terms and conditions not in the Policy.

133.    None of Liberty's reviewing physicians ever set forth any substantive reasons why Mr. Finley's treating doctors' opinions were incorrect.

134.    Liberty failed to explain why it credited the physician reviewers over Mr. Finley's treating physicians.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

135.     The peer reviewers were not given the Plan or other important records for reaching its decision that Mr. Finley could perform work.

136.     Liberty's claim process is designed to serve its own financial best interests.

137.     On information and belief, Liberty engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermination to terminate benefits.

138.     Liberty intentionally gathered evidence to support a decision to deny benefits.

139.     Mr. Finley alleges upon information and belief that Liberty has a parsimonious claims handling history.

140.     Lincoln Financial Group ("Lincoln Financial") announced on January 19, 2018 that it has entered into a definitive agreement to acquire Liberty's disability business. Upon completion of the transaction, Lincoln Financial will retain Liberty's Group Benefits business and reinsure Liberty's Individual Life and Annuity business to Protective Life Insurance Company.

141.     Mr. Finley is informed and believes that Lincoln Financial's acquisition of Liberty influenced Liberty's claim termination rates, including its decision to terminate Mr. Finley's claim.

142.     Mr. Finley is informed and believes that Liberty intentionally terminated claims, including Mr. Finley's, in advance of Lincoln Financial's acquisition of its disability business.

143.     Discovery into the acquisition and potential impact on Liberty's structural conflict of interest in deciding Mr. Finley's claim is warranted in light of the acquisition.

144.     Liberty failed to conduct a "meaningful dialogue" regarding Mr. Finley's claim.

145.     Under the *de novo* standard of review, to be entitled to benefits Mr. Finley need only prove by a preponderance of the evidence that he is disabled.

-17-

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

146.   Even under the abuse of discretion standard of review, Liberty abused its discretion, because its decision terminating Mr. Finley's disability benefits was arbitrary and capricious and caused or influenced by Liberty's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. § 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

147.   Mr. Finley is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Liberty's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Finley's LTD claim.

148.   Under the *de novo* standard of review, Mr. Finley is entitled to discovery regarding, among other things, the credibility of Liberty's medical reviews and Liberty's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

149.   Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Finley is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

150.   Mr. Finley is entitled to reinstatement of his LTD benefits and any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his LTD benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

151.   Pursuant to 29 U.S.C. § 1132(g), Mr. Finley is entitled to recover his attorneys' fees and costs incurred herein.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Liberty)**

152.   All other paragraphs are incorporated by reference.

153.   Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

154.   Liberty is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Finley.

155.   Under 29 U.S.C. § 1104(a), Liberty is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

156.   Under ERISA, which is founded in trust principles, Liberty is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

157.   In multiple ways throughout the administration of Mr. Finley's claim, Liberty breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3). *See supra* ¶104

158.   Liberty's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Liberty's claims handling was discharged imprudently and caused Mr. Finley serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

159.   To the extent that Liberty's denial of benefits caused Mr. Finley harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

160.   On information and belief, Liberty instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

161.   Mr. Finley is informed and believes that Liberty's employees are trained in administering claims in the best interests of Liberty, not Plan participants.

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

162.    Liberty demonstrated bias and malice against Mr. Finley through its employees. Instead of fully and fairly reviewing the medical evidence, Liberty unreasonably denied Mr. Finley's claim based on unreliable evidence.

163.    Liberty's failure to act prudently and in the best interests of Mr. Finley is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Liberty's conduct as it relates to Mr. Finley's claim.

164.    Mr. Finley is informed and believes that Liberty has targeted claims for termination under the Plan, including Mr. Finley's, which is a breach of fiduciary duty.

165.    On information and belief, Liberty breached its fiduciary duty to Mr. Finley by terminating his claim in an effort to avoid its financial liability.

166.    Based on the facts of this case, Mr. Finley has "other equitable relief" available to him in several forms, including but not limited to prejudgment interest, injunctive relief, and surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not remedy Liberty's breaches of fiduciary duty or make Mr. Finley whole for his losses from Liberty's breaches of fiduciary duty.

167.    The Court has broad discretion to fashion appropriate equitable relief and should mold the relief necessary to protect the rights of participants.

168.    Mr. Finley is entitled to enjoin any act or practice by Liberty that violates ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

169.    If Mr. Finley prevails and is placed back on claim, he is entitled to enjoin the following conduct in the ongoing handling of his claim:

➤ Liberty's reliance on medical reviewers who do not meet the Policy definition of Physician;

➤ Liberty's demand for objective medical evidence, which is not a requirement of the Plan;

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

**OBER PEKAS RONSTADT**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

➢ Liberty's misrepresentation of ERISA's requirements and the law governing ERISA;

➢ Liberty's improper claim handling; and

➢ Liberty's use of a reimbursement agreement that contains unlawful terms.

170.    Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Finley's benefits for its own profit.

171.    Liberty acted with malice and in bad faith against Mr. Finley, which constitutes a violation of its fiduciary obligations.

172.    ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Finley by Liberty's breaches of fiduciary duty violations.

173.    As a direct and proximate result of the breaches of fiduciary duty, Mr. Finley suffered actual harm that is not remedied under 29 U.S.C. § 1132(a)(1)(B).

174.    Pursuant to 29 U.S.C. § 1132(g), Mr. Finley is entitled to recover his attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Mr. Finley prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.      All past LTD benefits under the terms of the Plan;

B.      Reinstatement of LTD benefits;

C.      Clarification, declaration, and determation of Mr. Finley's rights to future benefits under the terms of the Plan;

D.      For any other benefits Mr. Finley may be entitled to receive under the Plan due to his disability;

E.      All other equitable relief that is proper as a result of Liberty's breaches of fiduciary duties, including but not limited to prejudgment interest, injunction, and surcharge;

F.      An award of Mr. Finley's attorneys' fees and costs incurred herein; and

G.      For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 22nd day of February, 2019.

OBER PEKAS RONSTADT

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
Attorneys for Plaintiff

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745